**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **VETR, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. ___________________** |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **VETR HEALTH LLC,** | ) | |
| **VETR HEALTH, INC., and** | ) | |
| **VETR HEALTH VETERINARY** | ) | |
| **SERVICE OF MICHIGAN, P.C.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## VERIFIED COMPLAINT

Plaintiff Vetr, LLC ("Vetr" or "Plaintiff"), by and through undersigned counsel, for its Verified Complaint against Defendants Vetr Health LLC, Vetr Health, Inc., and Vetr Health Veterinary Service of Michigan, P.C. (collectively, "Defendants"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. Vetr brings this action against Defendants for unfair competition, false designation of origin, and trademark infringement of Vetr's unregistered VETR trademarks under Section 43(a) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1125(a), for trademark infringement and unfair competition under Michigan common law, and for violations of the Michigan Consumer Protection Act (the "MCPA"), Mich. Comp. Laws § 445.901, *et seq.*

2. At inception and at its core to date, Vetr was and is in the veterinary pharmaceutical industry.

3. Since the mid-2010s, Vetr, through its predecessor, SBBB LLC, has sold, fulfilled, and distributed hundreds of thousands of units of over-the-counter and branded veterinary pharmaceutical compounds to consumers throughout the United States.

4. Since at least as early as 2020 in Michigan and at least as early as 2018 in other locations outside of Michigan, Vetr, itself and through its predecessor, SBBB LLC, has continuously used the coined and inherently distinctive mark VETR in connection with veterinary pharmaceuticals and related goods and services such as prescription fulfillment and retail veterinary pharmaceutical services (collectively, the "Vetr Goods and Services").

5. Since at least as early as September 17, 2024, Vetr has operated storefronts on Amazon, Walmart, and eBay using the mark VETR LABS (collectively with the mark VETR, the "VETR Marks").

6. As its business evolved over the past decade, Vetr expanded its offerings beyond branded pharmaceuticals into related sectors, including, without limitation, nutritional supplements and wellness products for pets, horses, and livestock; online retail store services featuring veterinary pharmaceuticals, pet medications, and related animal health products, including wholesale distribution to trade partners; downloadable mobile application software (through which consumers can access Vetr's products and obtain veterinary support); and veterinary telehealth and support services offered through the Vetr mobile application and Vetr's website at vetr.com.

7. Through years of continuous use, substantial investment, and the consistent quality of the goods and services offered under the VETR Marks, the VETR Marks have come to identify Vetr as the source of those goods and services in the minds of the consuming public.

8. As a result, Vetr has developed valuable goodwill in the VETR Marks.

9. Years after Vetr's first use of the VETR Marks, Defendants adopted and began using confusingly similar VETR-formative designations, including VETR HEALTH and VETR LABS (hereafter, the "Infringing Marks").

10. Upon information and belief, Defendants' earliest use of the Infringing Marks was confined to veterinary telehealth services in and around Grand Rapids, Michigan.

11. Upon information and belief, Defendants recently expanded their use of the Infringing Marks to over-the-counter and branded veterinary pharmaceutical products in and around Grand Rapids, Michigan.

12. Upon information and belief, Defendants intend to continue expanding their use of the Infringing Marks in connection with a broader set of products and services that further encroach upon Vetr's rights in the VETR Marks and in geographic regions outside of Grand Rapids, Michigan.

13. Upon information and belief, the related products and services Defendants currently offer or intend to offer under the Infringing Marks include veterinary services, retail veterinary pharmacy services, veterinary pharmaceutical products, and downloadable software and software as a service ("SaaS") for veterinary services and interactions with pet owners (collectively, "Defendants' Goods and Services").

14. Upon information and belief, Defendants' Goods and Services are closely related to, travel in the same channels of trade as, and target the same consumers as, the Vetr Goods and Services, or alternatively are a natural expansion of the Vetr Goods and Services offered under the VETR Marks.

15. As the senior user of the VETR Marks in Michigan and elsewhere, Vetr has priority of use of the VETR Marks over Defendants.

16. Defendants' unauthorized use of the Infringing Marks is likely to cause confusion, to cause mistake, and to deceive consumers as to the source, sponsorship, affiliation, or approval of Defendants' Goods and Services, and has caused and will continue to cause Vetr irreparable harm for which there is no adequate remedy at law.

17. Vetr therefore seeks injunctive relief to preclude further irreparable harm, as well as monetary relief and an award of attorneys' fees, as provided for under the relevant federal and state laws implicated herein.

## **JURISDICTION**

18. This is a civil action arising, in substantial part, under the Lanham Act. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 (federal question jurisdiction), 1338(a) (any act of Congress relating to patents, copyrights, and trademarks), and 1338(b) (unfair competition claims joined with a substantial and related claim under the trademark laws).

19. This Court also has supplemental jurisdiction over the claims in this Complaint which arise under the statutes and common law of Michigan pursuant to 28 U.S.C. § 1367(a), as the state law claims are so closely related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

20. This Court has personal jurisdiction over Defendants because each Defendant is organized under the laws of the State of Michigan or maintains its principal place of business in Grand Rapids, Michigan; because Defendants transact business within this state and this judicial district; and because Defendants have committed acts of infringement and unfair competition complained of herein in this state and this judicial district, causing injury to Vetr in this state and this judicial district.

## VENUE

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this district. Additionally, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because Defendants transact business in this district and a substantial part of the events giving rise to this dispute occurred and are continuing to occur in this district.

## PARTIES

22. Plaintiff Vetr, LLC is a limited liability company organized and existing under the laws of the State of Wyoming, with an address of 560-A NE F Street, Box 121, Grants Pass, Oregon 97526.

23. Upon information and belief, Defendant Vetr Health LLC ("Vetr Health LLC") is a limited liability company organized and existing under the laws of the State of Michigan, with its principal place of business at 342 Market Ave SW, Grand Rapids, Michigan 49503.

24. Upon information and belief, Defendant Vetr Health, Inc. ("Vetr Health, Inc.") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 342 Market Ave SW, Grand Rapids, Michigan 49503.

25. Upon information and belief, Defendant Vetr Health Veterinary Service of Michigan, P.C. (the "P.C.") is a professional corporation organized and existing under the laws of the State of Michigan, incorporated on December 15, 2023, with its principal place of business in Grand Rapids, Michigan. Upon information and belief, Bradley Boike is the owner of the P.C.

## FACTS

### I. Vetr and Its VETR Marks

26. Vetr provides veterinary pharmaceuticals and related goods and services, including online retail veterinary pharmacy services, the fulfillment of prescriptions for pets, and online retail store services featuring pet medication and veterinary drugs.

27. Since at least as early as 2018, Vetr, through its predecessor in interest, SBBB LLC, has continuously used the mark VETR in United States commerce in connection with veterinary pharmaceuticals and retail services related thereto.

28. Since at least as early as 2020, Vetr, through its predecessor in interest, SBBB LLC, has continuously used the mark VETR in Michigan in connection with veterinary pharmaceuticals and retail services related thereto.

29. Since at least as early as September 17, 2024, Vetr has operated storefronts on Amazon, Walmart, and eBay using the mark VETR LABS.

30. The VETR Marks are inherently distinctive, as the word "vetr" is the Old Norse term for "winter," which is arbitrary as used in connection with the Vetr Goods and Services.

31. Vetr has invested substantial time, effort, and financial resources in promoting the VETR Marks and the Vetr Goods and Services offered under the marks in Michigan and in interstate commerce.

32. As a result of Vetr's continuous use and promotion of the VETR Marks, the VETR Marks have become assets of substantial value to Vetr and a symbol of Vetr, the quality of its goods and services, and its goodwill, and the consuming public recognizes the VETR Marks and associates them with Vetr.

33. By virtue of its adoption and continuous, extensive use of the mark VETR in commerce since at least as early as 2018, Vetr owns strong and protectable common law rights in the VETR Marks in connection with veterinary pharmaceuticals and related goods and services.

34. On May 17, 2024, Vetr filed U.S. Trademark Application Serial No. 98/557,355 (the "'355 Application"), seeking registration on the Principal Register of the mark VETR for use with "Online retail veterinary pharmacy services; fulfillment of prescriptions for pets in the nature of processing online prescription orders; online retail store services featuring pet medication and veterinary drugs; order fulfillment services of pet medication and veterinary drugs" in Class 35.

35. Also on May 17, 2024, Vetr filed U.S. Trademark Application Serial No. 98/557,357 (the "'357 Application"), seeking registration on the Principal Register of the mark VETR for use with "Online veterinary services; veterinary services; veterinary advice" in Class 44.

36. On November 18, 2024, Vetr filed U.S. Trademark Application Serial No. 98/859,907 (the "'907 Application"), seeking registration on the Principal Register of the mark VETR for use with "Nutritional supplements for pets" in Class 5 (the '907 Application, '355 Application, and '357 Application are referred to collectively herein as the "Vetr Applications").

## II. Defendants' Infringing Activities

37. Upon information and belief, Defendants operate a veterinary services business based in Grand Rapids, Michigan.

38. Defendants offer, advertise, and render Defendants' Goods and Services under the Infringing Marks, including the designations VETR, VETR AI, VETR HEALTH, VETR LABS, and the VETR HEALTH logo.

39. The dominant literal element of the Infringing Marks is the term "VETR," which is identical to the dominant term in the VETR Marks.

40. The terms "AI" and "health" are generic or descriptive as applied to Defendants' Goods and Services. As reflected in the USPTO records for the Vetr Health Applications (as defined below), the term "health" has been disclaimed by Vetr Health LLC in its trademark filings.

41. On July 18, 2023, Vetr Health LLC filed U.S. Trademark Application Serial No. 98/090,043 (the "'043 Application"), seeking registration on the Principal Register of the standard character word mark VETR HEALTH for various goods and services. As stated in the '043 Application, as amended at the time of publication, Vetr Health LLC claimed rights in the VETR HEALTH mark for the following goods and services:

- Class 009 (based on intent to use): Downloadable computer application software for mobile devices, tablets, and other smart devices, namely, software for providing digital and virtual pet care, pet assessments, and pet advice and referrals; Downloadable computer application software for mobile devices, tablets, and other smart devices, namely, software for providing digital and virtual health screening and assessment services for pets; Downloadable computer application software for mobile devices, tablets, and other smart devices, namely, software for allowing pet owners to communicate with pet care provider about pet health, nutrition, training, and behavior; Downloadable computer application software for mobile devices, tablets, and other smart devices, namely, software for creating, organizing, analyzing, updating, and distributing pet care records and medical information between pet care provider and pet owner;

- Class 035: Online retail veterinary pharmacy services, namely processing and order fulfillment services for vitamins, medications, and supplements for pets;
- Class 038: Communication services, namely, electronic transmission services of messages and data for pet owners that enables pet owners to receive and send communications and requests to and from per [sic] care providers;
- Class 042: Providing temporary use of online non-downloadable software for providing digital and virtual pet care, assessments, advice and referrals; Providing temporary use of online non-downloadable software for allowing pet owners to communicate with pet care providers about pet health, wellness, nutrition, training, and behavior; Providing temporary use of online non-downloadable software for creating, organizing, managing, analyzing, updating, and distributing electronic pet care records and medical information between pet care provider and pet owner; Software as a service (SAAS) services featuring software for providing digital and virtual pet care; Software as a service (SAAS) services featuring software for allowing pet owners to communicate with pet care providers about pet health, wellness, nutrition, training, and behavior; Software as a service (SAAS) services featuring software creating [sic], organizing, managing, analyzing, updating, and distributing electronic pet care records and medical information between pet care provider and pet owner
- Class 044: Digital and virtual veterinary services for pets provided via phone, online chat or videoconferencing; Digital and virtual health screening and assessment services for pets provided via phone, online chat or videoconferencing; Clinical medical consultation services related to pet health,

wellness, nutrition, training, and behavior; Operating veterinary clinics rendered in virtual and in-home environments; Veterinary services rendered in virtual and in-home environments; Veterinary services provided in virtual and in-home environments; Veterinary consultations provided in virtual and in-home environments; Clinical consultation services related to pet health, wellness, nutrition, grooming, training, and behavior provided in virtual or in-home environments; Providing information and advice in the fields of pet health, wellness, nutrition, grooming, and behavior.

42. On July 18, 2023, Vetr Health LLC filed U.S. Trademark Application Serial No. 98/090,084 (the "'084 Application"), seeking registration on the Principal Register of the stylized design for the VETR HEALTH logo (the "VETR HEALTH & Design Mark") for use in connection with "Digital and virtual veterinary services for pets provided via phone, online chat or videoconferencing; Digital and virtual health screening and assessment services for pets provided via phone, online chat or videoconferencing; Clinical medical consultation services related to pet health, wellness, nutrition, training, and behavior; Operating veterinary clinics rendered in virtual and in-home environments; Veterinary services rendered in virtual and in-home environments; Veterinary services provided in virtual and in-home environments; Veterinary consultations provided in virtual and in-home environments; Clinical consultation services related to pet health, wellness, nutrition, grooming, training, and behavior provided in virtual or in-home environments; Providing information and advice in the fields of pet health, wellness, nutrition, grooming, and behavior" in Class 44 (collectively with the '043 Application, the "Vetr Health Applications").

43. In the Vetr Health Applications as amended in prosecution, with the exception of Class 9, which remains based on intent to use, Vetr Health LLC claimed dates of first use and first use in commerce of at least as early as August 3, 2022 (for the VETR HEALTH word mark) and January 1, 2023 (for the VETR HEALTH & Design Mark).

44. Upon information and belief, Defendants did not begin using the Infringing Marks in commerce for all of Defendants' Goods and Services listed in the Vetr Health Applications by the filing date thereof, rendering the Vetr Health Applications *void ab initio*.

45. In the alternative, Defendants' earliest claimed date of first use of the Infringing Marks for Defendants' Goods and Services in Michigan occurred multiple years after Vetr's first use of the VETR Marks in commerce and in Michigan.

46. Vetr has priority of use of the VETR Marks over Defendants.

47. Vetr has never authorized, licensed, or otherwise consented to Defendants' use of the VETR Marks or any confusingly similar designation.

48. Upon information and belief, Defendants offer and promote Defendants' Goods and Services in channels of trade that overlap with the channels of trade through which Vetr offers and promotes the Vetr Goods and Services under the VETR Marks.

49. Defendants' Goods and Services are closely related to and complementary to the Vetr Goods and Services. Consumers of veterinary services are the same consumers who purchase and/or prescribe veterinary pharmaceuticals and pet medications, and such goods and services are commonly offered by a single source under a single mark. Relatedly, both Vetr and Defendants use their respective marks in connection with SaaS services and downloadable software related to the provision of veterinary care and distribution of pet-care products.

50. Defendants' use of the Infringing Marks in connection with Defendants' Goods and Services is likely to cause confusion, to cause mistake, or to deceive consumers as to the source, sponsorship, affiliation, or approval of Defendants' Goods and Services, including by causing consumers to believe, incorrectly, that Defendants' Goods and Services originate with, are endorsed by, or are otherwise connected with Vetr, or vice versa.

## III. Defendants' Corporate Structure

51. Upon information and belief, Defendants operate a business in which Vetr Health LLC and Vetr Health, Inc. provide management, administrative, marketing, technology, and billing functions, and the P.C. serves as the professional entity through which licensed veterinarians render veterinary services.

52. Upon information and belief, on or about October 1, 2023, Vetr Health LLC and the P.C. entered into an Administrative Services Agreement in which Vetr Health LLC is identified as the management services organization and the P.C. is identified as the veterinarian group.

53. Upon information and belief, on or about October 1, 2023, Vetr Health LLC and the P.C. also entered into an Intellectual Property Agreement purporting to license intellectual property from Vetr Health LLC to the P.C.

54. Upon information and belief, as of October 1, 2023, the P.C. did not formally exist.

55. Upon information and belief, the P.C. was incorporated on December 15, 2023.

56. Upon information and belief, neither Vetr Health LLC nor Vetr Health, Inc. employs or has employed the veterinarians who render the veterinary services advertised and offered under the Infringing Marks; those veterinarians have rendered services as independent contractors and through the P.C.

57. Upon information and belief, neither Vetr Health LLC nor Vetr Health, Inc. exercises meaningful control over the nature and quality of the veterinary services rendered under the Infringing Marks, relying instead upon the individual veterinarians' own professional licensure obligations.

58. Upon information and belief, Defendants share common ownership, management, and control. Bradley Boike is the owner of the P.C. and serves as the chief medical officer of Vetr Health, Inc., and the same four individuals, including Boike, constitute the board that governs the business.

59. Upon information and belief, consumers of Defendants' Goods and Services make payment through a VETR HEALTH-branded online portal, and those payments are remitted to Vetr Health, Inc.

60. Upon information and belief, Defendants offer and provide online retail veterinary pharmacy services, dispense medications to their members, and transmit prescriptions to third-party pharmacies, including an online pharmacy partner and brick-and-mortar pharmacies.

61. Upon information and belief, Defendants did not begin providing such services until after Vetr's first use of the mark VETR in commerce and in Michigan.

62. Upon information and belief, the '043 Application and the '084 Application are owned by Vetr Health LLC.

63. Upon information and belief, each Defendant has used and continues to use the Infringing Marks in connection with Defendants' Goods and Services, and each has done so with the knowledge, authorization, and participation of the others.

## IV. The USPTO Proceedings and Harm to Vetr

64. The '084 Application was published in the Official Gazette for opposition on September 10, 2024.

65. The '043 Application was published in the Official Gazette for opposition on October 29, 2024.

66. On December 13, 2024, the United States Patent and Trademark Office (the "USPTO") suspended the '355 Application and '357 Application pending the outcome of the registration process for the Vetr Health Applications; the '907 Application was suspended on the same basis on May 27, 2025. According to the suspension notices, if the Vetr Health Applications register, the USPTO may refuse registration of the Vetr Applications under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), because of a likelihood of confusion.

67. On January 8, 2025, and February 21, 2025, respectively, Vetr filed timely Notices of Opposition against the '084 Application and '043 Application with the Trademark Trial and Appeal Board (the "TTAB"), instituted as Opposition Nos. 91296146 and 91297151 (the "Oppositions"), on the ground that the Vetr Health Applications are void *ab initio* for non-use of the applied-for marks as of the filing dates of the Vetr Health Applications.

68. While conducting discovery in the Oppositions—and specifically in conjunction with the August 19, 2026, deposition of Defendants' co-founder and primary veterinarian, Bradley Boike—Vetr first learned that Defendants' use of the Infringing Marks was more closely related to Vetr's use of the VETR Marks than anticipated, as Defendants' use is not confined to tele-vet services but extends to use in connection with pharmaceutical goods.

69. Upon information and belief, Defendants have actual knowledge of Vetr, the VETR Marks, and Vetr's rights in and to the VETR Marks.

70. Notwithstanding that knowledge, Defendants continue to use the Infringing Marks in connection with Defendants' Goods and Services, and, upon information and belief, continue to expand their use of the Infringing Marks.

71. Upon information and belief, Defendants' continued use of the Infringing Marks despite their knowledge of Vetr's prior rights demonstrates that Defendants' infringement is willful, deliberate, and intentional.

72. Defendants' infringing use is causing and will continue to cause consumer confusion, is placing the quality and reputation of the VETR Marks outside of Vetr's control, is obstructing the registration of the Vetr Applications, and is causing Vetr irreparable harm to its goodwill and to the value of the VETR Marks, for which there is no adequate remedy at law.

## COUNT I — FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND TRADEMARK INFRINGEMENT (15 U.S.C. § 1125(a))

73. Vetr incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

74. The VETR Marks are inherently distinctive, valid, and protectable.

75. Vetr has priority of use of the VETR Marks over Defendants, as its predecessor in interest, SBBB LLC, used the mark VETR continuously in United States commerce since at least as early as 2018 and in Michigan since at least as early as 2020, both of which are well before Defendants' earliest claimed date of first use of the Infringing Marks, and Vetr has continued to use the VETR Marks since its formation and acquisition of common law rights from its predecessor.

76. Without Vetr's consent, Defendants have used and continue to use in intrastate and interstate commerce the Infringing Marks in connection with the sale, offering for sale, distribution, and advertising of Defendants' Goods and Services.

77. Defendants' use of the Infringing Marks constitutes a false designation of origin and a false or misleading representation of fact that is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Vetr, or as to the origin, sponsorship, or approval of Defendants' Goods and Services by Vetr, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

78. The likelihood of confusion is heightened by the identity of the dominant "VETR" element of the parties' marks, the inherent distinctiveness and strength of the VETR Marks, the relatedness of the parties' respective goods and services, and the parties' overlapping consumers and marketing channels.

79. Defendants' conduct has been knowing, willful, and intentional, rendering this an exceptional case under 15 U.S.C. § 1117(a).

80. As a direct and proximate result of Defendants' unfair competition, false designation of origin, and infringement, Vetr has suffered and will continue to suffer irreparable harm and monetary damages, and Defendants have been unjustly enriched, entitling Vetr to injunctive relief under 15 U.S.C. § 1116 and to monetary relief under 15 U.S.C. § 1117, including Defendants' profits, Vetr's damages, the costs of the action, enhanced damages, and reasonable attorneys' fees.

**COUNT II — COMMON LAW TRADEMARK INFRINGEMENT UNDER MICHIGAN LAW**

81. Vetr incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

82. Michigan recognizes a common law claim for trademark infringement, which protects both registered and unregistered marks.

83. Through its use in commerce of the mark VETR in Michigan since at least as early as 2020, Vetr has acquired and owns valid and protectable common law trademark rights in the VETR Marks, and Vetr has priority in the VETR Marks over Defendants.

84. Defendants have used and continue to use the Infringing Marks in Michigan in connection with Defendants' Goods and Services without Vetr's consent.

85. Defendants' unauthorized use of the Infringing Marks for closely related goods and services offered to overlapping consumers through overlapping channels of trade is likely to cause consumers to confuse Defendants' Infringing Marks with the VETR Marks and constitutes trademark infringement under Michigan common law.

86. Defendants' conduct was and is willful and undertaken with knowledge of Vetr's rights.

87. As a direct and proximate result of Defendants' infringement, Vetr has suffered and will continue to suffer irreparable harm and monetary damages, entitling Vetr to injunctive relief, to Vetr's damages and Defendants' profits, and to exemplary damages as permitted by law.

**COUNT III — COMMON LAW UNFAIR COMPETITION UNDER MICHIGAN LAW**

88. Vetr incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

89. Michigan recognizes a common law cause of action for unfair competition, under which no person may, by imitation or unfair device, induce the public to believe that the goods or services it offers are those of another, and thereby appropriate to itself the value of the reputation which the other has acquired.

90. Vetr and Defendants are in related industries, if not direct competitors, as both parties offer veterinary-related goods and services under VETR-formative marks to the same class of consumers.

91. By adopting and using the Infringing Marks in connection with Defendants' Goods and Services, Defendants have created a likelihood of confusion and have deceived and are likely to deceive the public into believing that Defendants' Goods and Services originate with, are sponsored by, or are affiliated with Vetr, thereby passing off their services as those of Vetr and falsely designating the origin of their services.

92. Defendants' conduct as described herein constitutes unfair competition under Michigan common law.

93. Defendants' conduct was and is willful and undertaken with knowledge of Vetr's rights.

94. As a direct and proximate result of Defendants' unfair competition, Vetr has suffered and will continue to suffer irreparable harm and monetary damages, and Defendants have been unjustly enriched, entitling Vetr to injunctive relief, to compensatory damages and disgorgement of Defendants' resulting gains, and to exemplary damages as permitted by law.

**<u>COUNT IV — VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT</u>**

**<u>(MICH. COMP. LAWS § 445.901, *et seq.*)</u>**

95. Vetr incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

96. The MCPA declares unlawful "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including, *inter alia*, (i) "[c]ausing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services"; and (ii) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have." Mich. Comp. Laws §§ 445.903(1)(a), (1)(c).

97. The pet-owner-facing subset of Defendants' Goods and Services are advertised, offered, and sold to pet owners and other members of the consuming public primarily for personal, family, or household purposes. Defendants' conduct described herein therefore occurs in the conduct of "trade or commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(g).

98. Defendants' unauthorized use of the Infringing Marks in connection with Defendants' Goods and Services causes a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendants' Goods and Services, in violation of Mich. Comp. Laws § 445.903(1)(a).

99. Defendants' unauthorized use of the Infringing Marks further represents that Defendants' Goods and Services have a sponsorship or approval that they do not have, and that Defendants have a sponsorship, approval, status, affiliation, or connection with Vetr that Defendants do not have, in violation of Mich. Comp. Laws § 445.903(1)(c).

100. The ultimate resulting harm from Defendants' unfair and deceptive acts and practices falls upon consumers: pet owners who are deceived and confused as to the source, sponsorship, approval, and affiliation of the veterinary goods and services they purchase for the health and care of their pets, and veterinarians who use third-party goods and services like those provided by Vetr to treat animals.

101. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Vetr has suffered and will continue to suffer loss, including damage to its goodwill and the value of the VETR Marks.

102. Vetr is entitled to declaratory and injunctive relief and to recover its actual damages or $250.00, whichever is greater, together with its reasonable attorneys' fees, pursuant to Mich. Comp. Laws § 445.911(1)–(2).

## PRAYER FOR RELIEF

WHEREFORE, Vetr respectfully requests that the Court enter judgment in its favor and against Defendants and award the following relief:

A. A judgment that Defendants' use of the Infringing Marks infringes Vetr's rights in the VETR Marks and constitutes unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a); trademark infringement and unfair competition under Michigan common law; and a violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903;

B. Preliminary and permanent injunctive relief under 15 U.S.C. § 1116 and Michigan law enjoining Defendants, and all of their agents, representatives, employees, officers, attorneys, successors, assigns, affiliates, and any persons in privity or active concert or participation with any of them, from using VETR, VETR AI, VETR HEALTH, VETR

LABS, the VETR HEALTH & Design Mark, or any other mark, name, or designation confusingly similar to the VETR Marks, alone or in combination with other words, symbols, or designs, in connection with veterinary services, veterinary pharmaceuticals, or any related goods or services, together with an order directing Defendants, within thirty (30) days after being enjoined, to file with the Court and serve on Vetr a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction, pursuant to 15 U.S.C. § 1116(a);

C. An order pursuant to 15 U.S.C. § 1118 requiring that Defendants, at their cost, deliver up and destroy all labels, signs, prints, packages, advertisements, marketing materials, and other materials in Defendants' possession, custody, or control that bear the Infringing Marks or any other mark confusingly similar to the VETR Marks;

D. An order instructing Defendants to abandon U.S. Trademark Application Serial Nos. 98/090,043 and 98/090,084, and to agree to never file a trademark application for any other mark that would create a likelihood of confusion, mistake, or deception with the VETR Marks;

E. An accounting to show the amount of Defendants' sales, revenues, costs, profits, and other financial benefits, including but not limited to investment by third parties, attributable to Defendants' infringing and unfair conduct;

F. An award of Defendants' profits, Vetr's actual damages, and the costs of the action under 15 U.S.C. § 1117(a), together with, in the Court's discretion, enhanced damages of up to three times such amount, and a finding that this is an exceptional case entitling Vetr to its reasonable attorneys' fees under 15 U.S.C. § 1117(a);

G. An award of Vetr's damages and Defendants' profits under Michigan common law, together with exemplary damages as permitted by law;

H. An award of Vetr's actual damages or $250.00, whichever is greater, together with Vetr's reasonable attorneys' fees, pursuant to Mich. Comp. Laws § 445.911;

I. Pre-judgment and post-judgment interest as allowed by law; and

J. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Vetr, LLC hereby demands a trial by jury of all issues in its Complaint so triable.

Dated: September 17, 2026

Respectfully submitted,

/s/ Brian D. Wassom

**WARNER NORCROSS + JUDD LLP**
Brian D. Wassom (MI Bar No. P60381)
12900 Hall Road, Suite 200
Sterling Heights, MI 48313
Telephone: (586) 303-4139
Email: bwassom@wnj.com

**TRUST TREE LEGAL, P.C.**
Derrick M. Davis (TN Bar No. 037122)*
798 Berry Road #41400
Nashville, Tennessee 37204
Telephone: (865) 867-7500
Email: derrick@trusttree.com

**Admission forthcoming*

*Attorneys for Plaintiff,*
*Vetr, LLC*

# VERIFICATION

STATE OF OREGON §
§
COUNTY OF Josephine §

BEFORE ME, the undersigned authority, personally appeared Andrew Hamilton, member and duly authorized representative on behalf of Vetr, LLC, whose identity is known to me. After I administered an oath, affiant testified as follows:

"My name is Andrew Hamilton. I am the owner, sole Member, and CEO for Vetr, LLC. I am authorized and capable of making this verification on behalf of Vetr, LLC.

I have read Vetr, LLC's Verified Complaint. The facts stated therein are true and correct to the best of my knowledge, except those matters alleged upon information and belief, which I believe to be true at this time."

Andrew Hamilton
Member
Vetr, LLC

Sworn to and subscribed before me by Andrew Hamilton on this 17th day of September, 2026.

Notary Public in and for the
State of Oregon

My Commission expires: December 18, 2029

OFFICIAL STAMP
KEANDRA NEVAEH SHEPHERD
NOTARY PUBLIC - OREGON
COMMISSION NO. 1063962
MY COMMISSION EXPIRES DECEMBER 18, 2029